UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD BOONE, II,

        Plaintiff,

v.

DANIEL HEYNS, ET. AL.,

        Defendant.

_____/

Case No. 12-14098

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
MONA K. MAJZOUB

**ORDER**
1. **GRANTING DEFENDANTS HEYNS, STIEVE, HUNTER, BEALS, UPSTON, WEISS, COULING, WILSON, ROHRIG, KINDER, AND BORGERDING'S MOTION TO DISMISS [234];**
2. **GRANTING DEFENDANTS COULING AND WILSON'S MOTION TO DISMISS [225]**
3. **DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO AMEND COMPLAINT [261]**
4. **GRANTING DEFENDANTS CORIZON, MILES, SQUIER, LYBARGER, OULLETTE, BOMMERSHINE'S MOTION TO DISMISS [218]**
5. **DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER [250]**
6. **DENYING PLAINTIFF'S MOTION TO SHOW CAUSE WHY THE MDOC AND CORIZON DEFENDANTS AND/OR THEIR AGENTS SHOULD NOT BE HELD IN CONTEMPT OF COURT [264]**
7. **DENYING DEFENDANTS' MOTION FOR HIPAA DISCLOSURE ORDER [220]**

Plaintiff filed his initial complaint on September 14, 2012, alleging violations of the Eighth Amendment and 42 U.S.C. §1983. At the time of his filing, Plaintiff was incarcerated at G. Robert Cotton Correctional Facility (JCF) in Jackson,

Michigan, and is currently incarcerated at the Carson City Correctional Facility (DRF). Plaintiff filed an Amended Complaint [196] on July 23, 2013.

Defendants Corizon, Miles, Squier, Lybarger, Oullette, and Bommershine filed a Motion to Dismiss Counts III-VIII on July 22, 2016 [218]. Plaintiff responded on August 4, 2016 [221], and Defendants replied [226] on August 12, 2016. Defendants Heyns, Stieve, Hunter, Beals, Upston, Weiss, Couling, Wilson, Rohrig, Kinder, and Borgerding filed a Motion to Dismiss [234] on August 26, 2016. Plaintiff responded [240] on September 16, 2016, and Defendants replied [242] on October 17, 2017. Defendants Couling and Wilson filed a Motion to Dismiss [225] on August 11, 2016. Plaintiff responded [232] on August 25, 2016, and Defendants replied [237] on September 12, 2016. Plaintiff filed a supplemental response [241] to Defendant's Couling and Wilson's Motion to Dismiss on October 2, 2016.

Defendants Corizon, Miles, Squier, Lybarger, Oullette, and Bommershine filed a Motion for HIPAA Disclosure Order [220] on August 4, 2016. Plaintiff responded on August 15, 2016 [227], and Defendants replied [231] on August 24, 2016. Plaintiff filed a Motion for a Temporary Restraining Order [250] on February 7, 2017. Defendants filed responses [252; 253] on February 21, 2017. Plaintiff filed a second Motion for Leave to Amend and Supplement the Complaint *pro se* [261] on March 23, 2017. On March 31, 2017, Plaintiff also filed a Motion to Show Cause why the MDOC and Corizon Defendants and/or their Agents should not be held in contempt of

Court *pro se* [264] and a Motion to Strike Corizon Defendants' Response, Docket Number 253 [266].[1]

The Court finds the motion suitable for determination without a hearing with respect to all of Plaintiff's claims, in accord with Local Rule 7.1(f)(2). For the reasons stated below, Defendants' Motions to Dismiss [218; 225; 234] are **GRANTED**. Defendants Corizon, Miles, Squier, Lybarger, Oullette, and Bommershine's Motion for HIPAA Disclosure Order [220] is **DENIED**.

Plaintiff's Motion to Amend Complaint [261] is **DENIED without prejudice.** Plaintiff may refile a Motion to Amend that complies with local rule 15.1, and that comports with the findings of this order as described below. Plaintiff's Motion to Show Cause why Defendants should not be held in contempt of Court [264] and Motion for a Temporary Restraining Order [250] are **DENIED.**

## STATEMENT OF FACTS

Plaintiff's claims arose while he was confined at the Michigan Department of Corrections Reception and Guidance Center (RGC), and the G. Robert Cotton Correction Facility (JCF). At RGC on May 13, 2008, Plaintiff had a special accommodation notice (SAN) issued without a stop date for, *inter alia*, an air mattress. On March 3, 2012, Plaintiff alleges that he was called to medical at JCF to exchange his air mattress because his had a hole in it, causing him pain in his hips.

---

[1] The only filings done *pro se* at issue in this Order are referred to as such. All other Motions and filings were done through appointed counsel.

However, when he arrived, he was met by a Defendant Beals, who allegedly informed Plaintiff that she would not order any more air mattresses, and that they were not going to hand out any more air mattresses in the future.

Plaintiff alleges that his SAN for the air mattress, which previously had no stop date issued, had a stop date issued that day, despite the fact that Plaintiff alleges he had not seen a medical practitioner prior to this who ordered this stop date, in violation of MDOC Policy Directive 04.06.160. Plaintiff wrote several letters to Defendant agents of the MDOC, and filed grievances over the next few months about the situation, all of which were denied. Plaintiff alleges that the denial of his air mattress has caused him constant pain and sleep deprivation. His complaint also incorporates claims based upon the treatment he received for his other serious medical issues, that include sleep apnea, the removal of hardware from his left knee, a left knee brace accommodation, right foot palsy and kidney stones.

Plaintiff is seeking relief from eighteen Defendants, including, *inter alia*, agents of the MDOC, the Medical Contractor company CORIZON, that has contracted with the State of Michigan to provide health care to inmates, and employees of CORIZON. Plaintiff's claims are the following: violations of the Eighth Amendment, due to prison conditions constituting "cruel and unusual punishment" and policy/custom/practice that deliberately denied and/or delayed Plaintiff's access to required medical care; violations of due process and equal protection under the Fourteenth Amendment; retaliation under the First Amendment;

civil conspiracy; intentional infliction of emotional distress; totality of the conditions; and negligence and/or medical malpractice.

## 1. DEFENDANTS CORIZON, MILES, SQUIER, LYBARGER, OULLETTE, AND BOMMERSHINE MOTIONS TO DISMISS COUNTS III-VIII [218]

### LEGAL STANDARD

Defendants move to dismiss Counts III-VIII of Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On a Rule 12(b)(6) motion to dismiss, the Court must "assume the veracity of [the plaintiff's] well-pleaded factual allegations and determine whether the plaintiff is entitled to legal relief as a matter of law." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)).

### a. COUNT III: DUE PROCESS AND EQUAL PROTECTION CLAIMS UNDER THE 14TH AMENDMENT

#### i. DUE PROCESS

Plaintiff brings a claim of violation of due process concerning the removal of Plaintiff's CPAP machine and air mattress. Defendants challenge this claim on the basis that the remedy for a prisoner's §1983 deliberate indifference to serious medical needs is found in the Eighth Amendment, while a pretrial detainee may find relief in the Fourteenth Amendment Due Process clause. *Phillips v. Roane County*, 534 F. 3d 531 (6th Cir. 2008). Plaintiff contends that this misrepresents the state of the law, and that under *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court must ask if the

Plaintiff has alleged that Defendants' actions imposed an atypical and significant hardship in relation to the ordinary incidents of prison life. *See also Jennings v. Bradley*, 419 F. App'x 594, 597 (6th Cir. 2011).

Plaintiff's position does not address the argument presented by Defendants. It is clear that Plaintiff's due process claim relates to an alleged claim of deliberate indifference to serious medical needs. In the Sixth Circuit, the Eighth Amendment's prohibition on cruel and unusual punishment provides the basis for a §1983 claim of deliberate indifference to serious medical needs for a prisoner, while the due process clause protects pretrial detainees. *See e.g. Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014); *Stefan v. Olson*, 497 F. App'x 568, 576 (6th Cir. 2012).

Significantly, the case that Plaintiff cites from the Sixth Circuit to support his argument did not reflect a due process claim for deliberate indifference to medical needs, but rather concerned liberty interests in a challenge to placement in a Cell Slot Management program as an atypical and significant hardship, and is therefore not persuasive in this case. *Jennings v. Bradley*, 419 F. App'x 594, 597 (6th Cir. 2011). In Count I Plaintiff has already alleged an Eighth Amendment violation under the cruel and unusual punishment theory relating to his medical care, including denying him access to his CPAP and air mattress. The relief is properly sought under the Eighth Amendment rather than the Fourteenth Due Process, and therefore Plaintiff's Fourteenth Amendment Due Process claim is dismissed as to all Defendants.

## ii. EQUAL PROTECTION

In Count III, Plaintiff alleges that the intentional and deliberate deprivation of his air mattress, while other similarly situated individuals were allowed an air mattress, violated his rights under the Equal Protection Clause of the Fourteenth Amendment. "The Equal Protection Clause prohibits discrimination by government which burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Bench Billboard Co. v. City of Toledo*, 499 F. App'x 538, 547 (6th Cir. 2012).

It is undisputed that Plaintiff is not a member of a protected class; therefore, for his claim to survive, it must be prevail under a class of one theory. To successfully plead an equal protection claim as a class of one, Plaintiff must allege that "[he] and other individuals who were treated differently were similarly situated in all material respects." *Id.* Additionally, Plaintiff must show that the governmental entity "treated them differently without rational basis." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cty., Ohio*, 430 F.3d 783, 788 (6th Cir. 2005).

Plaintiff alleges that he has met this standard by, *inter alia*, providing an affidavit from a fellow prisoner who still has his air mattress. Plaintiff has not done this in the complaint. To factually plead that a similarly situated individual was treated differently, Plaintiff relies upon exhibits to his complaint, constituting an affidavit from a fellow prisoner who was allowed to have an air mattress was diagnosed with cancer. [2 at Pg ID 129]. Plaintiff is a person who underwent hip surgery, while the

Affiant is a cancer patient- these two are not similarly situated with respect to their need of an air mattress for medical reasons. Therefore, Plaintiff has not pled facts to support an equal protection claim and this count is dismissed as to all Defendants.

### b. COUNT IV: FIRST AMENDMENT RETALIATION AS AGAINST DEFENDANT MILES

Plaintiff alleges, as to Defendant Miles, that he:

> intentionally delay[d], den[ied], and or refuse[d] to treat Plaintiff's medical needs in retaliation of Plaintiff's protective conduct, redress of grievance guaranteed by the [First Amendment], while leaving Plaintiff in an 'unnecessary and wanton infliction' of physical, mental, and emotional pain and suffering and depriving Plaintiff of sleep.

[196 at ¶70]. Defendant seeks dismissal of the claim because, *inter alia*, it is undisputed that Defendant Miles did continue to provide medical treatment to Plaintiff after he filed grievances, and it is also undisputed that the alleged medical deprivation began before any grievances were filed, and therefore there is no casual connection.

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

In this case, there is no factual allegation addressing causation. Plaintiff filed his first grievance against Defendant Miles on July 4, 2011 [1 at ¶74-78]. However,

the complaint alleges that he was deprived of medical care commencing on June 17, 2011, when Defendant Miles allegedly refused to look at Plaintiff's medical documentation concerning his need for removal of hardware from his knee, a knee brace, an AFO brace and CPAP machine. [1 at ¶¶74-75]. Plaintiff also alleges that, on June 30, 2011, he learned that, while Defendant Miles told him at that June 17, 2011 meeting that he would refer Plaintiff to physical therapy and take other action concerning his medical complaints, nothing was done for his health care. [1 at ¶¶76-77]. It was this initial alleged deprivation of medical care that caused Plaintiff to file his first grievance against Defendant Miles on July 4, 2011. [1 at ¶78].

Further, it is undisputed that Defendant Miles did continue to provide medical care to Plaintiff following his filing of several grievances against him. Defendant Miles provided Plaintiff with Vicodin for kidney stone pain, requested a referral to a urologist, referral to a respiratory therapist, wrote an order for an AFO, and submitted a request for hardware removal [1 at ¶¶93, 94, 112, 114, 121, 137, 145]. The fact that Plaintiff alleges that the denial/refusal of treatment began before the grievances were filed, coupled with the fact that he continued to receive treatment and referrals for further medical care by Defendant Miles after the filing of the grievances, does not support a retaliation claim because there is no causation pled in the complaint. These allegations surround a seeming disagreement over the treatment, and allegations of deliberate indifference over that medical response, which are properly brought in Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Miles

in Count I. Therefore, Plaintiff's retaliation claim against Defendant Miles is dismissed.

### c. COUNT V: CIVIL CONSPIRACY AS AGAINST DEFENDANT MILES

In Plaintiff's claim of civil conspiracy as to Defendant Miles, he alleges that Miles condoned and conspired to cover up the alleged falsification of medical documents, and canceled and/or unlawfully confiscated Plaintiff's air mattress. Defendant claims that this count should be dismissed because, *inter alia*, "a corporation cannot conspire with its own agents or employees." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991). Since the claim is raised against MDOC and Corizon employees, who are all agents of the State of Michigan with respect to providing appropriate conditions to incarcerated individuals, they are thus all the same "person" and the intracorporate conspiracy doctrine applies, so this claim should be dismissed.

In response, Plaintiff argues first that this should be the subject of a Rule 56 motion because it does not concern the sufficiency of the complaint. Plaintiff also contests that Corizon is an agent of the state, and instead argues that it is an independent contractor with the MDOC. However, it is clear that Corizon and its employees are agents of state and considered state actors, otherwise Plaintiff would not be able to bring §1983 claims against them.

It is settled in the Sixth Circuit that Corizon and its employees are indeed agents of the state in relation to their contracts with the MDOC. *See e.g Hodges v.*

*Corizon*, No. 14-11837, 2015 WL 1511153, at *4 (E.D. Mich. Mar. 30, 2015) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817–18 (6th Cir.1996)) (stating that Corizon is an agent of the state and a state actor for purposes of §1983 in relation to their contracts with the MDOC). Therefore, the intracorporate conspiracy doctrine applies, and under the Sixth Circuit's "general rule in civil conspiracy cases that a corporation cannot conspire with its own agents or employees," this count must be dismissed.

### d. COUNT VIII: NEGLIGENCE AND MEDICAL MALPRACTICE AS AGAINST ALL INDIVIDUAL DEFENDANTS; COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED) AS AGAINST ALL INDIVIDUAL DEFENDANTS

Defendants argue that Plaintiff's count VIII of negligence and medical malpractice and count VI of IIED should be dismissed, because these claims sounds in medical malpractice and Plaintiff failed to comply with the substantive requirements for Michigan medical malpractice claims. Plaintiff argues that the Court should find these requirements to be procedural, and thus inapplicable in federal court under Federal Rule of Civil Procedure 8(a). *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938).[2]

---

[2] Plaintiff does not dispute that these claims would require medical malpractice filing requirements under state law and that these requirements were not met. Therefore, any argument against this assertion made by Defendants in their Motion is deemed conceded and waived, and the Court will consider only whether Michigan's filing requirements for medical malpractice claims are procedural or substantive. *See McPherson v. Kelsey*, 125 F. 3d 989, 995-96 (6th Cir. 1997).

The Court has previously considered this precise issue and held that these requirements are substantive. *See Bade v. United States*, No. 11-10780, 2012 WL 1555072 (E.D. Mich. May 1, 2012) (per Judge Tarnow). The Court is not persuaded that these requirements are procedural, in the face of Michigan Court holdings and the previous analysis under *Erie,* which concluded that the requirements are procedural, would be outcome determinative, encourage forum shopping, and lead to inequitable administration of law. *Id* at *8-10. Therefore, the Court finds that the medical malpractice filing requirements are substantive and Counts VIII and VI must accordingly be dismissed against all Defendants for failing to meet the medical malpractice filing requirements under MCL §600.2912b and 600.2912d.

### e. COUNT VII: TOTALITY OF THE CIRCUMSTANCES AS AGAINST ALL DEFENDANTS

In Count VII, Plaintiff alleges that "[t]he totality of the aforesaid acts and/or omissions of the individual Defendants amounts to clear violations fobidded (*sic*) by the U.S. Constitution." [196 at §82]. Defendants construe this as an Eighth Amendment conditions of confinement claim. Defendants argue that this count must be dismissed because, *inter alia*, Plaintiff has failed to allege, with any specificity, the elements needed to support his claim, and that his pleading contains only his personal opinions which are insufficient to state a claim or satisfy federal notice pleading requirements. *Saltire Indus, Inc. v. Waller, Lansden, Dortch & Davis, PLLC*, 491 F.

3d 522, 526 (6th Cir. 2007) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 f.

2d 434, 436 (6th Cir. 1988)).

Plaintiff did not refute this argument in his response brief, therefore these

arguments are deemed conceded and waived, and Count VII is dismissed as to all

Defendants. *See McPherson v. Kelsey*, 125 F. 3d 989, 995-96 (6th Cir. 1997).

## 2. DEFENDANTS COULING AND WILSON'S MOTION TO DISMISS BASED ON THE STATUTE OF LIMITATIONS AND INSUFFICIENT SERVICE OF PROCESS [225]

Defendants Couling and Wilson filed a Motion to Dismiss based on the Statute

of Limitations and Insufficient Service of Process [225] on August 11, 2016.[3]

Plaintiff, through counsel, responded [232] on August 25, 2016, and Defendants

replied [237] on September 12, 2016. Plaintiff, through counsel, filed a supplemental

brief on the issue of insufficient service of process [241] on October 2, 2016.

Defendants responded to these arguments in their reply brief concerning Defendants

Heyns, Stieve, Hunter, Beals, Upston, Weiss, Couling, Wilson, Rohrig, Kinder, and

Borgerding Motions to Dismiss [242] on October 17, 2016.

## STATEMENT OF FACTS

Plaintiff filed his initial complaint on September 14, 2012. When this complaint

was filed, he served the 12 Defendants named in the original complaint. [6-18].

Plaintiff filed a Motion to Amend the Complaint [55] on January 28, 2013. Sometime

between the time the Motion to Amend was filed and the Motion was granted,

---

[3] Defendants Rohrig, Kinder and Borgerding join in the statute of limitations
argument made by Defendants Couling and Wilson [234 at 3].

Plaintiff states that he served the Defendants individually with a copy of the Amended Complaint, a Notice of Law Suit, and a Request to Waive Service of Summons with a pre-paid self-addressed stamped envelope with return service. [202]. The Court granted Plaintiff's Motion to Amend [73] on July 25, 2013. This amended complaint included Couling, Wilson, Rohrig, Kinder and Borgerding, who were not parties in the initial complaint. On the same day that the Motion to Amend Complaint was entered, the Court stayed the case pending appointment of counsel for the Plaintiff. [73].

While the case was stayed, the Plaintiff continued to file several *pro se* filings. He filed a Motion asking, *inter alia*, that his Motion for Injunctive Relief be granted [75]. He moved again for injunctive relief on October 15, 2013 [79], and raised the issue again in a letter to the Court on December 12, 2013 [84]. The Court set a status conference for December 19, 2013 [80]. At the end of this conference, Defendants were ordered to provide Plaintiff a knee brace and air mattress before December 26, 2013. [81].

Motion practice continued on both sides from December 19, 2013 until January 22, 2014 when Plaintiff was provided *pro bono* counsel. [82-99].   The Court denied Defendants' Motion to Enforce Stay [102] on January 24, 2013, stating that the public interest and the irreparable harm at risk for Plaintiff meant that the stay had been lifted at the Court's discretion. Following the lifting of the stay, motion practice continued by both parties, including *pro se* motions by Plaintiff, and others through counsel for

10 months. There was never any attempt to serve any of the newly added Defendants during this time.

On December 2, 2014 Plaintiff sent then-MDOC attorney James Farrell an email, through a family member, asking if he was planning to file an appearance on behalf of the newly added Defendants, and stating that if he did not, Plaintiff would seek default judgment. [241-1]. Plaintiff wrote James Farrell via U.S. mail on December 21, 2014, again stating that he would file a Motion for Default Judgment against those Defendants if Ferrell did not enter an appearance.

The case continued to be active, with many filings continuously being made, until the Court stayed the case on March 27, 2015. [136-173]. Plaintiff was appointed a new counsel during this time as well. [156]. Service again was never attempted. Despite this stay, Plaintiff continued to file Motions, despite the fact that the basis for the stay (the Sixth Circuit Appeal) was still pending.

On September 29, 2015, Plaintiff filed a Request for Clerk's Entry of Default against Defendants Burns, Couling, Kinder, Rohrig, and Wilson, despite never having served these Defendants. Plaintiff filed a *pro se* Motion to effect service by the US Marshalls [202] on October 16, 2015. A third order for appointment of counsel was entered on November 24, 2015, and counsel's office entered its appearance on November 30, 2015. [203; 204]. On July 1, 2016, summons were re-issued for the

Defendants at issue in this motion. Defendants were served in late July and early August.[4]

## ANALYSIS

It is undisputed that at the time that Plaintiff's amended complaint was filed, the Federal Rules of Civil Procedure (Fed. R. Civ. P.) 4(m) allowed 120 days to serve his summonses. Plaintiff's amended complaint was filed on July 25, 2013 [73]. Service was not completed until various dates in 2016, well outside of 120 days. Defendants argue that they must be dismissed because Plaintiff took approximately 1000 days before attempting to serve Defendants with his allegations concerning events that took place over five years previously. Plaintiff requests that the Court use its discretion to extend the time for service of process under Fed. R. Civ. P. 4(m), even if it finds that Plaintiff lacks good cause. *See Slenzka v. Landstar Ranger, Inc.*, 204 F.R.D. 322, 326 (E.D. Mich. 2001).

District courts in this circuit have agreed that the 1993 Amendments to Rule 4, the Advisory Committee Notes concerning the amendments, and the Supreme Court's decision in *Henderson v. United States*, 517 U.S. 654, 116 S. Ct. 1638, 134 L.Ed.2d 880 (1996) provide Courts discretion under Rule 4(m) to grant an extension of time, even in the absence of showing good cause. *See Elec. Workers Local 58 Pension Tr.*

---

[4] Outside of Defendant Rohrig, there is an argument that the remaining Defendants were not served properly, because the summons were improperly sent via certified mail, without restricted delivery to the addressees. This was not addressed by the Plaintiff, and is irrelevant to the analysis below.

*Fund v. Rite Elec. Co.*, No. 10-CV-11815, 2010 WL 4683883, at *2 (E.D. Mich. Nov. 10, 2010)(collecting cases). The Court finds this reasoning persuasive, and agrees that the time for serving a Defendant may be extended even in cases where good cause is missing. However, this discretion lies solely in the hands of the Court, and absent a show of good cause for delay, there is no guarantee that an extension will be granted.

In this case, the Court does not believe that there is a showing of good faith to automatically extend the time for Plaintiff to serve Defendants. First, the delay of nearly 1000 days from the time the amended complaint was filed to the attempted service of Defendants, is extreme. Additionally, while Plaintiff was proceeding *pro se* for some of the time, Plaintiff was represented by various counsel for the majority of that time, and there is no excuse presented for why service was not attempted earlier. While Plaintiff states in is Motion to Effectuate Service that he informed his previous attorneys of the problem with service, they failed to respond or take action. The very fact that Plaintiff filed that *pro se* motion shows that he knew what type of action to take. [202]. Plaintiff provides no reason why it took him two years to file a *pro se* Motion to Effectuate Service when he was actively engaged in filing throughout the case, even when the case was stayed. This Motion illustrates that Plaintiff had been aware of the service issue the entire time, since his initial service was never returned. The Court will thus continue to address whether it will exercise its discretion to extend the dates for service.

When considering whether to exercise discretion, courts in this district consider five factors, including whether:

> (1) a significant extension of time was required; (2) an extension of time would prejudice the defendant other than the inherent "prejudice" in having to defend the suit; (3) the defendant had actual notice of the lawsuit; (4) a dismissal without prejudice would substantially prejudice the plaintiff; *i.e.*, would his lawsuit be time-barred; and (5) the plaintiff had made any good faith efforts at effecting proper service of process.

*Slenzka v. Landstar Ranger, Inc*., 204 F.R.D. 322, 326 (E.D. Mich. 2001)(citing *Wise v. Dep't of Defense*, 196 F.R.D. 52, 55 (S.D.Ohio 1999)). The first factor weighs in favor of the Defendants, as there has been a delay of close to three years, requiring a significant extension of over 900 days. The extension would prejudice the Defendants, because the claims stem from events that took place in 2011. Considering the long delay in service, Defendants have a possibility of prejudice as a result of loss of memory, as well as possible loss of evidence from events that took place over five years ago.

There is no evidence that the Defendants had actual notice of the lawsuit. Plaintiff argues contrary, based upon a declaration in which he states that, on February 21, 2013 he individually mailed a copy of the First Amended Complaint, notice of law suit, and request to waive service of a summons to the Defendants. However, regardless of whether Defendants received these waivers, of which there is no evidence, the First Amended Complaint was not entered by the Court until July 23, 2013. Therefore this constituted ineffective attempted service. Further, Plaintiff knew

that the waivers were not returned, and yet failed to attempt any further action until, at the very earliest, 2014, when he spoke with the MDOC attorney about the possibility of filing a Motion for Default Judgment against these Defendants. However, since these Defendants had never been served, they were not yet represented by Farrell, and the Defendants were not placed on notice. Therefore, Defendants only received notice in 2016, close to three years after the filing of the amended complaint and five years after the alleged acts that underlie Plaintiff's claims.

As far as prejudice to Plaintiff, he would be harmed since his claims would be time barred under the two year statute of limitations for §1983 claims in Michigan. *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986). However, Plaintiff would not be foreclosed completely from seeking relief, as there still remain three federal claims against several MDOC and CORIZON employees. Finally, as to the good faith shown by the Plaintiff, the Court would again stress, as shown above, that Plaintiff was aware that these Defendants had not signed the waiver, and yet did nothing about that until 2015, despite filing continuous *pro se* motions, and later in 2016, filing a *pro se* motion to effectuate service. There is no argument as to this delay, other than Plaintiff had alerted his previous attorneys, yet they took no action and because of confusion over the various stays entered by the Court. This is not persuasive because Plaintiff was active in *pro se* filings throughout the time that he has had attorneys when they failed to file motions he believed necessary, as well as during times the case was stayed. Further, the action or inaction of an attorney has no impact on the good cause

analysis under Rule 4(c). *Friedman v. Estate of Presser*, 929 F.2d 1151, 1157 (6th Cir. 1991) Moreover, the stays have no impact, because the moving Defendants were not affected by the stays since they were not yet parties to the case. *Id.*

Considering the extreme delay, and the complete lack of action undertaken with respect to these Defendants for three years, the Court grants Defendants' Motion to Dismiss, and Defendants Couling and Wilson are dismissed from the case.

### 3. DEFENDANTS HEYNS, STIEVE, HUNTER, BEALS, UPSTON, WEISS, COULING, WILSON, ROHRIG, KINDER, AND BORGERDING'S MOTION TO DISMISS [234]

Defendants Heyns, Stieve, Hunter, Beals, Upston, Weiss, Couling, Wilson, Rohrig, Kinder, and Borgerding filed a Motion to Dismiss [234] on August 26, 2016. Plaintiff, through counsel, responded [240] on September 16, 2016. Defendants replied [242] on October 17, 2016. Plaintiff, through counsel, filed a supplemental brief on the issue of insufficient service of process [241] on October 2, 2016.

#### a. INSUFFICIENT SERVICE OF PROCESS AND STATUTE OF LIMITATIONS

As stated above in footnote three, Defendants Rohrig, Kinder and Borgerding joined in Defendants Couling and Wilson's statute of limitations and insufficient service of process motions. In section two above, the Court granted Defendants Couling and Wilson's Motion to Dismiss, based upon their arguments concerning the statute of limitations and insufficient service of process. Therefore, Defendants Rohrig, Kinder and Borgerding are also dismissed.

### b. Eleventh Amendment Immunity

Defendants Heyns, Stieve, Hunter, Beals, Upston, Weiss, Couling, Wilson, Rohrig Kinder, and Borgerding all argue that they are entitled to Eleventh Amendment immunity where the Plaintiff seeks monetary damages for actions taken in their official capacity. Plaintiff, through counsel, does not contest that these Defendants are entitled to Eleventh Amendment immunity in their official capacity. Therefore, the Court grants Defendants Heyns, Stieve, Hunter, Beals, Upston, Weiss, Couling, Wilson, Rohrig Kinder, and Borgerding's Motion to Dismiss because these Defendants are immune from damages in their official capacities under Eleventh Amendment immunity. These Defendants remain parties in the case in their individual capacity.

### c. Director Heyns is Entitled to Immunity from the State-Law Claims

Defendant Heyns, the ex-director of the MDOC, argues that he is entitled to absolute immunity from the state-law claims under the immunity afforded highest-appointive executive officials under MCL §691.1407(5). Plaintiff concedes this point, however the Court has dismissed all state claims against all Defendants above. Therefore, while Defendant Heyns is entitled to this immunity, the issue is now moot as no viable state claims remain. However, the Court states for the record that Defendant Heyns does enjoy immunity against state law claims.

### d. ROHRIG IS ENTITLED TO A DISMISSAL BECAUSE PLAINTIFF HAS FAILED TO STATE A CLAIM OF CIVIL CONSPIRACY AGAINST HER

Plaintiff brings a single claim against Defendant Rohrig, a civil conspiracy count. Defendant Rohrig argues that Plaintiff has failed to state a claim against her. However, the civil conspiracy charge was dismissed above for failure to state a claim. Therefore, this issue is moot, and Defendant Rohrig is dismissed from the case.

### 4. PRO SE SECOND MOTION TO AMEND COMPLAINT [261]

Plaintiff filed his initial complaint on September 14, 2012, alleging violations of the Eighth Amendment and 42 U.S.C. §1983. Plaintiff filed an Amended Complaint [196] on July 23, 2013, adding additional parties and claims. Plaintiff filed a *pro se* Motion seeking Leave to Amend Complaint [261] on March 24, 2017.

Fed. R. Civ. Pro. 15(a)(2) provides that, when a Motion to Amend is filed more than 21 days after the Complaint is served, the Court may grant the Motion "when justice so requires." While motions to amend are frequently granted, they can be denied for a declared reason including:

> undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.

*Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962).

As stated above, the Court has disposed of several of the counts brought in the proposed complaint in the Second Motion to Amend. Additionally, at this point, Plaintiff has retained new counsel, who can advise the Plaintiff concerning his desire

to file an amended complaint, in light of the rulings in this order. With respect to any claims that do not fall under the dismissed counts, it would facilitate the Court's analysis if the claims were presented in a properly drafted proposed amended complaint. Under the applicable local Rule:

> A party who moves to amend a pleading shall attach the proposed amended pleading to the motion. Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must, except by leave of court, reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference. Failure to comply with this Rule is not grounds for denial of the motion.

E.D. Mich. LR 15.1. Plaintiff has previously incorporated his initial complaint in his first amended complaint. After reviewing the proposed complaint, the Court is unclear how the second amended complaint would appear in its entirety since it is the second version to incorporate text. While the Court cannot deny the complaint solely for failing to conform to the local rule, because some of the Counts have been dismissed, and Plaintiff now has retained new counsel, the second Motion to Amend [619] is denied without prejudice. Plaintiff may refile a motion, if desired, that comports with the findings of this order and complies with local rule 15.1.

5. **MOTION FOR TEMPORARY RESTRAINING ORDER [250]; MOTION TO SHOW CAUSE WHY THE MDOC SHOULD NOT BE HELD IN CONTEMPT OF COURT [264]**

The Court granted Plaintiff's Motion for Preliminary Injunction on February 6, 2015 [167]. Defendants filed a Notice of Appeal of that order on March 5, 2015 [169]. The Sixth Circuit entered an order on March 21, 2016, reversing the Court's approval

of the Motion for Preliminary Injunction [206], specifically instructing that, on remand, the Court must perform a full evidentiary hearing, providing the Defendants opportunity to prepare and present evidence prior to granting injunctive relief.

Plaintiff, through counsel, filed a Motion for Temporary Restraining Order [250] on February 7, 2017, requesting that the Court grant the motion prior to holding an evidentiary hearing, per the Sixth Circuit's mandate. Defendants responded [252; 253] on February 21, 2017. Plaintiff filed a reply *pro se* [265] on March 31, 2017. The Court was clearly instructed by the Sixth Circuit that its order granting injunctive relief was reversed, and that prior to granting additional injunctive relief, an evidentiary hearing must be held [206]. Therefore, the Court denies this Order requesting injunctive relief prior to holding an evidentiary hearing.

On March 31, 2017, Plaintiff filed *pro se* a Motion to Show Cause why the MDOC and Corizon Defendants should not be held in Contempt of Court [264]. Plaintiff argues that the Sixth Circuit's order, while reversing the Court's Order granting injunctive relief – *i.e.* this Court's previous holding that Plaintiff must be given access to an air mattress and knee brace – concluded Defendants did not have the ability to take his mattress away because they remained under the Court's previous order. This argument has no merit. The Court's grant of injunctive relief was reversed, therefore the Defendants no longer had an active Court order preventing them from assessing whether Plaintiff was entitled to an air mattress, given his current medical condition, and that the removal of the air mattress from his special accommodations

was not in violation of any Court order. Therefore, the Court denies this Order [264] and Defendants are not in contempt of Court.

6. **MOTION FOR HIPAA DISCLOSURE ORDER AND/OR QUALIFIED PROTECTIVE ORDER [227]; MOTION TO STRIKE RESPONSE TO MOTION FOR HIPAA DISCLOSURE [266]**

Defendants filed a Motion for HIPAA Disclosure Order and/or Qualified Protective Order [227] on August 4, 2016 [220]. Plaintiff filed a response on August 15, 2016 [227] and Defendants replied [231] on August 25, 2016. In their Motion, Defendants are seeking either a qualified protective order and/or a disclosure order under 45 CFR §164.512(e)(1) which will allow them to communicate *ex parte* with Plaintiff's health care providers. Effectively, the Defendants seek permission to deny Plaintiff notice of any meetings with his health care providers, as well as the ability to meet with them outside the presence of Plaintiff. [220 at 17].

It is undisputed amongst the parties that HIPAA neither permits nor prohibits *ex parte* communications with treating physicians, and that it is within the Court's discretion under its broad authority to regulate discovery, whether to allow *ex parte* communications with Plaintiff's physicians. *See Croskey v. BMW of N. Am.*, No. 02-73747, 2005 WL 4704767, at *4 (E.D. Mich. Nov. 10, 2005). It is also undisputed that, in the context of judicial proceedings, HIPAA provides three ways for parties to be exempted from the general rule of non-disclosure of personal health information of patients: (1) "obtaining a court order," (2) "sending a subpoena or discovery request where plaintiff has been given notice of the request," or (3) "sending a subpoena or

discovery request where reasonable effort has been made to obtain a qualified protective order." *Croskey v. BMW of N. Am.*, No. 02-73747, 2005 WL 4704767, at *2 (E.D. Mich. Nov. 10, 2005)

Defendants cite *Shropshire v. Laidlaw Transit, Inc*., 2006 U.S. Dist. LEXIS 52943 (E.D. Mich., August 1, 2006)(MJ Morgan) for the proposition that HIPAA does not prohibit *ex parte* communications with Plaintiff's health care providers. *See also Croskey v. BMW of North America, et al*., 2005 U.S. Dist. LEXIS 43442 (E.D. Mich., November 14, 2005)(J Edmunds)(finding that "45 C.F.R. § 164.512(e)(1)(ii)(B), as defined by Section 164.512(e)(1)(v), does not require specific notice to Plaintiff's counsel before Defendants conduct an *ex parte* interview with Plaintiff's treating physician. Nor does it require Plaintiff to consent to such an interview."). Defendants also argue that this Order would benefit both parties by avoiding the need for formal depositions, and would merely put them on equal footing with Plaintiff since he can already engage in *ex parte* communications with his treating physicians outside of the MDOC.

In his response, Plaintiff cites *Strayhorne v. Caruso*, No. CIV. 11-15216, 2014 WL 916814, at *1 (E.D. Mich. Mar. 10, 2014)(J Duggan) to support the proposition that the Court should not grant an order that allows *ex parte* communication with treating physicians, because it risks violating HIPAA's strong policy in favor of protecting the privacy of patient medical records, and that there were options available, such as subpoenas or discovery requests. Further, Plaintiff points out that he

is currently incarcerated, and thus has difficulty contacting his treating physicians and attorney. Also, Plaintiff states that most of the treating physicians in this case are currently named Defendants, or are employees with the MDOC or Corizon, rendering Defendants equal footing argument nonresponsive to the situation he faces.

The Court agrees with Plaintiff. The case at hand resembles *Strayhorne* more than Defendants' main citation, *Shropshire*. In the case*,* the Plaintiff was suing over injuries she and her daughter incurred arising from an automobile accident with Defendant's school bus. *Shropshire*, 2006 WL 6323288 at *1. In contrast, *Strayhorne* was a prisoner civil rights case, clearly analogous to the situation here. In *Strayhorne*, while the Court discounted the Magistrate's consideration that the Plaintiff was a prisoner because of attorney representation, the Court relied on the fact that HIPAA only allows "expressly authorized" protected health information to be disclosed in a judicial proceeding. *Strayhorne*, 2014 WL 916814 at *4. The Court reasoned that Plaintiff's physicians could not be expected to know what information was relevant to Plaintiff's claims, and was not relevant, and therefore, to combat the risk that confidential information would be shared, even inadvertently, the Court denied a Motion for a Protective order that would allow *ex parte* communications. *Id*.

The Court agrees with the Court in *Strayhorne* that the privacy concerns of Plaintiff are not protected by *ex parte* communications with his non-MDOC physicians. Further, the fact that the majority of Plaintiff's treating physicians are either Defendants or employees of Defendant Corizon, means that the entry of this

order would tilt fairness in discovery towards Defendants, and would fail to level the playing field as Defendants suggest. Also, the fact that Plaintiff is incarcerated, and therefore has difficulty in meeting with his attorney and could not be present during depositions, is an additional factor weighing in favor of denying the motion, especially considering the history of Plaintiff having many different *pro bono* attorneys throughout this case.

Therefore, given the facts and circumstances present in this case, the Court concludes that Defendants can utilize formal discovery procedures as dictated under 45 CFR §164.512(e)(1)(ii), and Defendants' motion is denied.

## CONCLUSION

Defendants' Motions to Dismiss [234, 225, 218] are granted. In conclusion, as to Plaintiff's amended complaint, Count I and II remain in their entirety, Count III is dismissed as to all Defendants, Count IV is dismissed as to Defendant Miles only, and Counts V, VI, VII, and VIII are dismissed as to all Defendants. Defendants Heyns, Stieve, Hunter, Beals, Upston, Weiss, Couling, Wilson, Rohrig Kinder, and Borgerding's are immune from damages in their official capacities under Eleventh Amendment immunity. These Defendants remain parties in the case in their individual capacity. Defendant Rohrig is dismissed from the case.

Additionally, Defendants' Motion for HIPAA Disclosure Order and/or Qualified Protective Order [220] is denied. Plaintiff's Second Motion to Amend the Complaint [261] is denied without prejudice. Plaintiff's Motion to Show Cause why

Defendants should not be held in contempt of Court [264] and Motion for a Temporary Restraining Order [250] are denied.

**IT IS ORDERED** that Defendants' Motions to Dismiss [234, 225, 218] are **GRANTED**. Accordingly, Count I and II remain in their entirety, Count III is dismissed as to all Defendants, Count IV is dismissed as to Defendant Miles only, and Counts V, VI, VII, and VIII are dismissed as to all Defendants. Defendants Heyns, Stieve, Hunter, Beals, Upston, and Weiss are immune from damages in their official capacities under Eleventh Amendment immunity. These Defendants remain parties in the case in their individual capacity. Defendants Couling, Wilson, Rohrig, Kinder, and Borgerding are dismissed from the case for insufficient process and service of process.

**IT IS FURTHER ORDERED** that Defendants' Motion for HIPAA Disclosure Order and/or Qualified Protective Order [220] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Second Motion to Amend the Complaint [261] is **DENIED without prejudice.** Plaintiff may refile a motion if desired that comports with the findings of this order and follows local rule 15.1.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Show Cause why Defendants should not be held in contempt of Court [264] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for a Temporary

Restraining Order [250] is **DENIED.**

    **SO ORDERED**.


                              s/Arthur J. Tarnow
                              Arthur J. Tarnow
Dated: September 11, 2017        Senior United States District Judge