UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RICHARD BOONE II,

        Plaintiff,                       Case No. 1:12-cv-14098

v.                                             Honorable Thomas L. Ludington
                                                   United States District Judge
JEFFERY STIEVE, et al.,

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO STRIKE EXPERT REPORT AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DISMISSING CASE WITH PREJUDICE**

Plaintiff alleges Defendants were deliberately indifferent to his sleep apnea and need for an air mattress in violation of the Eighth Amendment. Pending since September 14, 2012, the case was reassigned to the undersigned on February 16, 2022.

Meanwhile, the Sixth Circuit decided *Phillips v. Tangilag*, 14 F.4th 524 (6th Cir. 2021), holding that prisoners who received extensive care for a serious medical need must provide expert testimony of inadequate care to prove the objective element of their deliberate-indifference claim.

Although Plaintiff received extensive care for his medical needs, he did not provide expert testimony to meet his obligation to establish grossly inadequate care. So Defendants filed motions for summary judgment. In response, Plaintiff sought to retain a new expert witness, who Defendants contest as untimely.

At issue here are Defendants' motions for summary judgment and motion to strike.

**I.**

**A.**

In relevant part, this Court adopts the following background facts from the late Judge Arthur J. Tarnow's order resolving the first round of summary-judgment motions:

> Plaintiff was initially incarcerated within the custody of the MDOC in May 2003 and released on parole in 2008. On October 21, 2009, Plaintiff attempted to rob a store and while fleeing the scene of the crime, he fell in a ditch and fractured his left tibial plateau, among other things. Plaintiff was arrested and treated for his injuries at Botsford Hospital and then confined in the Wayne County Jail until March 16, 2011, when he was returned to the custody of the MDOC.
>
> The events giving rise to the Fourth Amended Complaint allegedly occurred between March 2011 and September 2012, while he was incarcerated at the Charles Egeler Reception and Guidance Center (RGC) and the G. Robert Cotton Correctional Facility (JCF), both of which are located in Jackson, Michigan. Generally, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment by denying him adequate medical care for sleep apnea, kidney stones, right foot drop, residual left knee problems following surgery on his left tibia, and the complications and residual effects of a total right hip replacement.

*Boone v. Heyns*, No. 12-14098, 2020 WL 2832251, at *1 (E.D. Mich. May 31, 2020) (cleaned up). Numerous defendants and claims have since been dismissed. *See generally id.*

Plaintiff's Fifth Amended Complaint advances two Eighth Amendment claims: (1) that Richard Miles,[1] Jeffery Stieve, and Harriet Squier were deliberately indifferent to his medical need for a CPAP machine (Count I), and (2) that Stieve and Miles were deliberately indifferent to his medical need for an air mattress (Count II). ECF No. 447 at PageID.6912–13.

The facts relevant to those claims, as provided by Judge Tarnow, read as follows:

> *1. Sleep Apnea*
> Plaintiff experienced episodes of obstructive sleep apnea while being treated at Botsford Hospital in October 2009. He received a continuous positive

---

[1] Defendant Richard A. Miles has since passed away and been replaced by Richard Walker McHugh as personal representative of the Estate of Richard Miles. *Boone v. Stieve*, No. 1:12-CV-14098, 2022 WL 4465156, at *3 (E.D. Mich. Sept. 23, 2022); *see also In re Est. of Miles*, No. 2022-405662-DE (Mich. Oakland Cnty. Probate Ct. filed Mar. 11, 2022).

airway pressure (CPAP) machine from his mother to use for the sleep apnea while at the hospital, and he was discharged to the Wayne County Jail with instructions to continue using the CPAP machine at night. Medical staff at the Wayne County Jail allowed Plaintiff to continue using the CPAP machine.

. . . .

Plaintiff was transferred to JCF on April 27, 2011. He sent a medical kite regarding sleep apnea, an inability to sleep, tiredness, and irritability on June 8, 2011. He was seen in response to this kite on June 9, 2011, and the medical provider sent an email to the nursing supervisor and Housing Unit Manager (HUM) to address the issue of Plaintiff's CPAP machine. On August 8, 2011, Plaintiff had an appointment with Defendant Miles, and he told Miles that he had not received the CPAP machine because there is no sleep study on file. Plaintiff had another appointment with Miles on September 26, 2011, at which Miles noted that Plaintiff had previously used the CPAP machine with good response, that he was awakening with shortness of breath and had difficulty staying asleep. Miles gave Plaintiff an Epworth Sleepiness Scale ("ESS") test; and Plaintiff scored a 12. Miles assessed Plaintiff's sleep apnea as good and ordered a sleep study for October 10, 2011. Plaintiff had another visit with Miles on October 21, 2011, who noted that Plaintiff's sleep apnea was a chronic problem, but there was no notation regarding scheduling a sleep study. Miles conducted a chart review on October 25, 2011, noted that there was no documented indication or prescription for a CPAP machine, and he terminated Plaintiff's SA therefore. Miles requested a Respiratory Therapy Evaluation for Sleep Apnea on October 28, 2011. Squier denied Miles's request on November 3, 2011, citing no evidence of hypertension and recommended that Plaintiff initiate weight loss, decrease his upper body development, increase his aerobic activity, and continue to be monitored.

. . . . On July 24, 2012, Plaintiff kited that he awakes gasping for air. On July 27, 2012, Dr. Michael Szymanski indicated that he would request use of a CPAP machine or formal testing for sleep apnea if the CPAP was deferred, and he made that request on July 31, 2012. Defendant Stieve deferred Dr. Szymanski's request with instructions to confirm that Plaintiff's CPAP machine was still in storage, get external records but if not available consider sleep study, and encourage weight loss.

Plaintiff initiated this lawsuit on September 9, 2012. . . .

On October 11, 2012, Defendant Squier approved Plaintiff for a sleep study, which was performed on November 14, 2012. The sleep-study report, dictated on January 15, 2013, indicated diagnoses of obstructive sleep apnea, significant nocturnal hypoxemia, and possible associated central apnea, and it recommended clinical correlation and implementation of an auto set CPAP machine.

The CPAP machine was approved on February 4, 2013, and on February 6, 2013, a Special Accommodation for the CPAP was issued with no stop date and the CPAP was provided to Plaintiff.

*Id.* at *2–3 (cleaned up).

*6. Air Mattress*

In March 2008, Plaintiff underwent a total right-hip replacement at the University of Michigan and was discharged back into MDOC custody with orders to sleep on an air mattress. He later received a special accommodation for an air mattress and continued to use it until he was paroled in 2008. Upon his return to the MDOC on March 17, 2011, Boomershine issued a special accommodation to Plaintiff for an air mattress. When Plaintiff was transferred to JCF, an air mattress was ordered for him on April 27, 2011 with a stop date of May 27, 2011. On May 23, 2011, Plaintiff submitted a kite requesting a new air mattress because his current one was leaking and was informed that he would be called out to exchange his old mattress for a new one. The exchange happened on May 25, 2011. Plaintiff exchanged his air mattress again on November 29, 2011.

Plaintiff requested a new air mattress on March 5, 2012, and Licensed Practical Nurse Karina Beals told Plaintiff that it was being discontinued because according to Stieve and the standard criteria, Plaintiff did not meet the qualifications for an air mattress. On March 13, 2012, Miles informed Plaintiff that he did not meet the criteria for an air mattress. Plaintiff asserts that he began to experience severe back and hip pain after his air mattress was discontinued and sent multiple kites regarding the pain that he was experiencing. He was given an extra pillow for his hip on October 9, 2012. Plaintiff treated with Dr. Shanthi Gopal on November 1, 2012, at which appointment he was upset about his air mattress not being restored. Gopal advised Plaintiff to try the stretching exercises and weight loss recommended by the RMO; he also requested RMO approval for the nonformulary pain medication, Norco, for Plaintiff's chronic hip pain. This request was deferred in favor of trying rotating NSAIDs; Ultram 50 mg was approved. On December 11, 2012, Plaintiff reported to health care complaining of chronic pain, stating that the Ultram was being given too early to help and that his mattress was too hard. He was informed that he was not eligible for an air mattress.

. . . .

On March 7, 2013, Stieve approved an air mattress for Plaintiff for six months; Plaintiff received the air mattress on March 13, 2013. A proposed extension of Plaintiff's special accommodation for an air mattress was deferred on December 5, 2013 by Dr. Borgerding, who reasoned that "air mattresses are considered in cases of decubiti." The air mattress was removed from Plaintiff's property on December 9, 2013, but it subsequently returned to Plaintiff pursuant to the court's December 19, 2013 order and instructions from Stieve to MDOC staff in furtherance of that order.

There is no indication that the named Defendants had any further involvement in Plaintiff's healthcare as it relates to his air mattress. Nevertheless, Plaintiff and the MDOC continued to disagree about Plaintiff's need for an air mattress. On February 6, 2015, the court granted Plaintiff's Motion for Preliminary Injunction and ordered Defendants to provide Plaintiff with an air mattress, which order was subsequently reversed by the Sixth Circuit on March 21, 2016, for an evidentiary hearing. On November 22, 2017, the court determined that an evidentiary hearing was no longer necessary and ordered Defendants to provide Plaintiff with an air mattress until his parole.

*Id.* at *7–8 (cleaned up).

### B.

On September 17, 2021, the Sixth Circuit decided *Phillips v. Tangilag*, 14 F.4th 524 (6th Cir. 2021). There, Donald Phillips, a Kentucky inmate, sought medical care for a painful, softball-size mass on his calf, which a CT scan revealed was a hematoma, internal bleeding for which surgery is generally not recommended because it "typically goes away on its own." *Phillips v. Tangilag*, 14 F.4th 524, 529 (6th Cir. 2021). Phillips alleged the hematoma did not go away and sued his doctors under the Eighth Amendment's ban on "cruel and unusual punishments" for not surgically removing it. *Id.* Reasoning that deliberate-indifference claims should not have a lower burden of proof than state-law medical-negligence cases, the Sixth Circuit held that Phillips's deliberate-indifferent claim failed for lack of "expert evidence suggesting that his doctors were grossly incompetent." *Id.*

### C.

Based on *Phillips*, Defendants requested leave to file second motions for summary judgment. ECF Nos. 421; 424. Leave was granted. *Boone v. Stieve*, No. 1:12-CV-14098, 2022 WL 2312368 (E.D. Mich. June 27, 2022); *Boone v. Stieve*, No. 1:12-CV-14098, 2022 WL 2294042 (E.D. Mich. June 24, 2022). Then Defendants filed second motions for summary judgment. ECF Nos. 426 (Harriet Squier); 429 (Jeffery Stieve). In essence, Defendants contend that Plaintiff's remaining claims fail because he has not retained an expert witness to testify about the adequacy of the care that he received, as *Phillips* now requires. The parties twice stipulated to extend Plaintiff's response deadline. ECF Nos. 433; 434. Then Plaintiff filed a motion to adjourn it a third time, ECF No. 439, which was granted, *see* ECF No. 440. Confusingly, Plaintiff responded to only Defendant Squier's summary-judgment motion. *See generally* ECF No. 440.

On October 17, 2022, Plaintiff also filed an amended witness list, newly identifying Dr. Oktai Mamedov, a purported expert in sleep apnea. *See* ECF No. 438 at PageID.6797. Dr. Mamedov's curriculum vitae and expert report are attached to Plaintiff's Response to Defendants' Motions for Summary Judgment. *See* ECF Nos. 440-1; 440-2; 440-3.

Arguing Plaintiff's witness disclosure is untimely, Defendant Stieve has filed a motion to strike the witness disclosure, *see* ECF Nos. 441; 442, which has been fully briefed, ECF No. 448.

As explained hereafter, Defendant Stieve's Motion to Strike Expert Report will be granted, *infra* Part II, and Defendants' Motions for Summary Judgment will be granted and the case will be dismissed, *infra* Part III.

## II.

Defendant Stieve has filed a motion to strike the expert report of Dr. Oktai Mamedov under Federal Rules of Civil Procedure 26 and 37(c)(1). ECF No. 442. Stieve argues Dr. Mamedov's expert report should be stricken because Plaintiff's disclosure was filed late and without the court's leave.

Plaintiff responds that he should be permitted to file Dr. Mamedov's expert report because the scheduling order's expert-witness-disclosure deadline did not apply to the disclosure of expert reports. *See* ECF No. 448 6915–16.

### A.

The Sixth Circuit has held that district courts have broad discretion to exclude untimely disclosed expert-witness testimony. *Pride v. BIC Corp.*, 218 F.3d 566, 578–79 (6th Cir. 2000) (upholding the exclusion of untimely expert-witness reports and affidavits); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1446 (6th Cir. 1993) (noting that the district court "has the discretion to refuse the filing of untimely affidavits").

The source of the district court's discretion in this matter is Rule 16 of the Federal Rules of Civil Procedure, which grants district courts wide latitude to impose sanctions for failure to comply with the scheduling orders intended to govern the parties' preparation of their cases. *Clarksville–Montgomery Cnty. Sch. Sys. v. U.S. Gypsum Co.*, 925 F.2d 993, 998 (6th Cir. 1991); *accord Estes v. King's Daughters Med. Ctr.*, 59 F. App'x 749, 752 (6th Cir. 2003) (unpublished) ("Rule 16 grants district courts broad discretion to enforce their scheduling orders."). District courts may impose whatever sanction is appropriate, under the circumstances. FED. R. CIV. P. 16 advisory committee's note to 1983 amendment.

**B.**

Plaintiff did not timely disclose Dr. Mamedov or his expert report until after the discovery deadline ended. In October 2018, the parties stipulated to set a discovery deadline of December 27, 2018. ECF No. 340. As Plaintiff acknowledges, he disclosed Dr. Mamedov 1,390 days after the discovery deadline ended. *See* ECF No. 448 at PageID.6916 (stating Plaintiff disclosed Dr. Mamedov on October 17, 2022). And that late disclosure occurred after *six* adjournments of the scheduling order, the first of which was 2,324 days before the final discovery deadline. *See* ECF Nos. 210; 243; 248; 237; 287; 304. Neither party has requested an adjournment of the discovery deadline since. However, Plaintiff not only responded to Defendants' requests for leave to file second motions for summary judgment, ECF No. 422, but also stipulated to adjourn his response deadline to the motions for summary judgment—twice, *see* ECF Nos. 433; 434. Then he filed a motion to extend his response deadline a third time, which was granted. *See* ECF No. 439. Yet after six years and nine extensions, Plaintiff has still never asked Defendants or this Court for permission to disclose an expert witness after the discovery deadline.

Instead, Plaintiff has sought to debate the language of the scheduling orders—as if setting a deadline to identify the "names of all witnesses, lay and expert" creates "no requirement . . . to exchange reports of the experts" before the discovery deadline. *See* ECF No. 448 at PageID.6915. Moreover, there were no expert deadlines adjourned after discovery ended that might have given the parties the sense that such contextomy could be parsed from the court's orders. Absent express permission from the court, parties should assume that the discovery deadline is the end of discovery. *Appalachian Reg'l Healthcare, Inc. v. U.S. Nursing Corp.*, No. 714CV00122KKCEBA, 2017 WL 9690401, at *6 (E.D. Ky. Sept. 1, 2017) ("Generally, the discovery deadline specifies the date on which all discovery must be completed, therefore, any document requests must be served at least 30 days prior to the discovery deadline." (first quoting *United States v. Carell*, No. 3:09-0445, 2011 WL 2078023, at *8 (M.D. Tenn. May 26, 2011); and then citing *United Consumers Club, Inc. v. Prime Time Mktg. Mgmt.*, 271 F.R.D. 487, 495 (N.D. Ind. 2010))).

On top of all that, the docketed version of Dr. Mamedov's expert report is a photocopy that appears as if someone covered part of the original with a blank sheet of paper to hide the report's date. *See* ECF No. 440-3 at PageID.6822. And the final page of the report appears to be a newly added signature page. *See id.* at PageID.6823. Screenshots of both pages have been attached to the end of this Order. *See infra* Figures 1, 2. Whatever it is, Plaintiff has not explained it. Courts should not permit parties to submit "doctored-up 'empirical' evidence." *See* Matthew N. Preston II, *The Tweet Test: Attributing Presidential Intent to Agency Action*, 10 BELMONT L. REV. 1, 43 (citations omitted). "Yet this Court will give Plaintiff the benefit of the doubt" on this issue. *Cf. LeVay v. Morken*, 590 F. Supp. 3d 1037, 1049 (E.D. Mich. 2022) (citing *Novak v. Federspiel*, No. 1:21-CV-12008, 2021 WL 5198521, at *8 (E.D. Mich. Nov. 9, 2021)).

District courts have been affirmed for striking expert disclosures in substantially similar circumstances. *Estes v. King's Daughters Med. Ctr.*, 59 F. App'x 749, 753 (6th Cir. 2003) (unpublished) (affirming district court's exclusion of expert affidavit as untimely because it "granted repeated extensions at plaintiffs' request, allowed discovery to proceed for more than eighteen months, and explicitly reminded plaintiffs, by issuing two show-cause orders, of the necessity of expert testimony").

Defendant Stieve's motion to strike the expert witness will be granted because Plaintiff has untimely disclosed an expert witness and his report, has not requested leave to do so during thousands of possible days, and has made, at most, a curious and unconvincing argument about it. FED. R. CIV. P. 16(f)(1)(C) ("On motion or on its own, the court may issue any just orders . . . if a party or its attorney . . . fails to obey a scheduling or other pretrial order.").

### III.

Part III addresses Defendants' Motions for Summary Judgment.

### A.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant has the initial burden of "identifying" the record evidence "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). A genuine issue of fact requires more than "a mere scintilla of evidence," *id.* at 251, more than "some metaphysical doubt," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The court must draw all reasonable inferences in favor of the nonmovant to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

Summary judgment will be granted if the nonmovant fails to establish a genuine issue of material fact on the elements of its case that the moving party has challenged. *See Celotex Corp.*, 477 U.S. at 322. But summary judgment will be denied if the challenged elements have "genuine factual issues that . . . may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).

**B.**

Plaintiff's sole remaining Eighth Amendment claims allege (1) that Miles, Stieve, and Squier were deliberately indifferent to his medical need for a CPAP machine (Count I), and (2) that Stieve and Miles were deliberately indifferent to his medical need for an air mattress (Count II). ECF No. 447 at PageID.6912–13.

Defendants filed motions for summary judgment, relying on *Phillips v. Tangilag*, 14 F. 4th 524 (6th Cir. 2021), arguing that Plaintiff's claims should be dismissed because he "has not retained a medical expert to testify regarding what care a competent doctor would provide, and why care provided by [Defendants] was grossly incompetent." ECF Nos. 426 at PageID.6666; 429 at PageID.6740. Confusingly, Plaintiff has only responded to Squier's summary-judgment motion. *See generally* ECF No. 440. Plaintiff's arguments hinge on the expert testimony of Dr. Oktai Mamedov, *see generally* ECF No. 440, which this Court has stricken as untimely, *see* discussion *supra* Part II.

In *Phillips v. Tangilag*, 14 F. 4th 524 (6th Cir. 2021), the Sixth Circuit held that proving a deliberate-indifference claim based on an allegation of inadequate care or delay of care requires

expert medical testimony. Specifically, the *Phillips* court held that, because the plaintiff received care and merely challenged the adequacy of that care, "[he] needed to present expert medical evidence describing what a competent doctor would have done and why the chosen course was not just incompetent but grossly so." *Id.* at 536.

There is no question of fact that Plaintiff received treatment from Defendants for his serious medical needs: a CPAP for sleep apnea and an air mattress for a musculoskeletal condition. *See* ECF No. 440 at PageID.6811; discussion *supra* Section I.A.

But Plaintiff did not timely retain a medical expert to testify about whether Defendants' care to Plaintiff was grossly incompetent or what care a competent doctor would have provided—regarding both counts.

Even if Dr. Mamedov's expert testimony was considered, Plaintiff's claims would not survive. For one thing, Dr. Mamedov does not address Plaintiff's need for an air mattress for a musculoskeletal condition. *See generally* ECF Nos. 440-1; 440-2; 440-3. And with respect to sleep apnea, Dr. Mamedov's expert report, at best, argues Defendants were negligent. *See, e.g.*, ECF No. 440-3 at PageID.6819 ("In my opinion, ordering sleep study was reasonable . . . ."); *id.* ("I think, the above denial for sleep study was unreasonable."); *id* at PageID.6820 ("I think it was unreasonable not to have sleep study because it was denied before."); *id.* at PageID.681 ("There is enough evidence and information for me to conclude that both Miles and Squire were subjectively aware of Plaintiff's serious condition and were indifferent to it for two years until it became too severe to ignore."). Simply put, the report does not argue that the medical care that Defendants provided was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (citation omitted).

For these reasons, both of Plaintiff's deliberate-indifference claims fail as a matter of law, entitling Defendants to summary judgment. *See Phillips*, 14 F.4th at 535–38 (6th Cir. 2021). Because Plaintiff has no remaining claims, his Fifth Amended Complaint will be dismissed with prejudice.

## IV.

Accordingly, it is **ORDERED** that Defendant Stieve's Amended Motion to Strike Expert Report, ECF No. 442, is **GRANTED**.

Further, it is **ORDERED** that Defendant Stieve's Motion to Strike Expert Report, ECF No. 441, is **DENIED AS MOOT**.

Further, it is **ORDERED** that Plaintiff's Expert Report, ECF Nos. 440-1; 440-2; 440-3, and Plaintiff's Amended Witness List, ECF No. 438, are **STRICKEN**.

Further, it is **ORDERED** that Defendants' Motions for Summary Judgment, ECF Nos. 426; 429, are **GRANTED**.

Further, it is **ORDERED** that Plaintiff's Fifth Amended Complaint, ECF No. 447, is **DISMISSED WITH PREJUDICE**.

**This is a final order and closes the above-captioned case**.

Dated: November 21, 2022                               s/Thomas L. Ludington
                                                       THOMAS L. LUDINGTON
                                                       United States District Judge



Figure 1.



Figure 2.